Mark H Hutchings, Esq.
Nevada Bar No. 12783
**HUTCHINGS LAW GROUP, LLC**
552 E. Charleston Blvd.
Las Vegas, Nevada 89104
Telephone: (702) 660-7700
Facsimile: (702) 552-5202
MHutchings@HutchingsLawGroup.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DELANIE BUTLER and JOHN ROBINSON, individually and on behalf of all similarly situated class and collective action members,<br><br>Plaintiffs,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware Limited Liability Company; PRA GROUP, INC., a Delaware Corporation; DOES I through X, inclusive; ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, DELANIE BUTLER and JOHN ROBINSON, individually and on behalf of all similarly situated class and collective action members (individually referred to as "Butler" or "Robinson", collectively referred to as "Plaintiffs"), by and through counsel, Mark H. Hutchings, Esq. of the law firm Hutchings Law Group, LLC, with this Complaint and alleges against PORTFOLIO RECOVERY ASSOCIATES, LLC, and PRA GROUP, INC. (individually referred to as "Portfolio" or "PRA", collectively referred to as "Defendants") as follows:

## JURISDICTION AND VENUE

1. This FLSA case is brought pursuant to 29 USC 201 *et seq.* and supplemental Nevada law for the failure to pay wages, unpaid overtime, unlawful practices and damages, and is also brought pursuant to the WARN Act pursuant to 29 USC 2101 *et. seq.* on behalf

**PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

     of Plaintiffs and other similarly situated employees.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 USC 1331.  This Court has pendant jurisdiction over any state law claims pled herein pursuant to 28 USC 1367.

3. Venue in the United States District Court for the District of Nevada is proper pursuant to 28 USC 1391(b)(1) and (2) because Defendants maintain a place of business in Clark County, Nevada, and because the District of Nevada is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

4. At all times relevant hereto, DELANIE BUTLER is and was a resident of Las Vegas, Nevada and was an employee employed by Defendants.

5. At all times relevant hereto, JOHN ROBINSON is and was a resident of Las Vegas, Nevada and was an employee employed by Defendants.

6. At all times relevant hereto, PORTFOLIO RECOVERY ASSOCIATES, LLC is and was a Delaware limited liability company doing business in Clark County, Nevada or otherwise maintained substantial contacts therewith.

7. At all times relevant hereto, PRA GROUP, INC. is and was a Delaware corporation doing business in Clark County, Nevada or otherwise maintained substantial contacts therewith.

8. The true names and/or capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES I through X, and ROE CORPORATIONS I through X, inclusive, are unknown to Plaintiffs at this time, who therefore sues said defendants by such fictitious names.  Each of the defendants designated herein by fictitious names is in some manner responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as herein alleged.  Plaintiffs ask leave of the Court to amend this Complaint when the true names and capacities of said defendant have been ascertained.

9. Whenever it is alleged in Complaint that a party did any act or thing, it is meant that

such party's officers, agents, employees, or representatives did such act or thing and at the time such act or thing was done, it was done with full authorization or ratification of such party or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of such party's officers, agents, servants, employees, or representatives. Specifically, parties are liable for the actions of their officers, agents, servants, employees, and representatives.

10. Each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants as each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said acts, making each of the Defendants an agent of the other making each of the Defendants jointly responsible and liable for the acts and omission of each other as alleged herein.

11. At all times relevant hereto, Plaintiffs and those similarly situated were "employees" as defined by NRS 608.010 and 29 USC 203(e)(4) and were "affected employees" as defined by 29 USC 2102(a)(5).

12. At all times relevant hereto, Defendants were "employers" as defined by NRS 608.011, 29 USC 2101(a)(1), and 29 USC 203(d).

## ALLEGATIONS OF FACT

### WARN Act Allegations

13. Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

14. Defendants are a nationwide account collection company with a regional office in Henderson, Nevada ("Las Vegas Regional Office" or "LVRO").

15. Defendants employ or employed approximately 200 employees at LVRO.

16. Upon information and belief, Defendants opened their most recent iteration of LVRO in January of 2018 in Henderson, NV.

17. Upon information and belief, when LVRO opened in January 2018 in Henderson, NV,

it contained only a collections department, it did not contain a litigation department.

18. Upon information and belief, in the spring and summer of 2019, it was clear that LVRO was not performing in a manner comparable to other of Defendants' offices located in other parts of the United States.

19. Upon information and belief, in the spring and summer of 2019, it was also clear that LVRO was more expensive to operate that other of Defendants' offices located in other parts of the United States.

20. Upon information and belief, in the spring and summer of 2019 it was also clear that LVRO had personnel problems caused by incessant fighting between Human Resources and Management over chronic employee complaints about Management, and that said conflict was worse and more difficult than compared with other of Defendants' offices located in other parts of the United States.

21. Upon information and belief, in the spring and summer of 2019, Defendants began to take measures to open a new office in Danville, VA.

22. Upon information and belief, throughout the 2019 calendar year, Defendants and their agents communicated to LVRO and its executives and staff that if LVRO did not improve its performance, the LVRO office would be closed.

23. Upon information and belief, in the spring and summer of 2019, Defendants and their agents began recruiting staff to transfer from LVRO to other offices located around the United States.

24. Upon information and belief, in the summer or fall of 2019, LVRO Vice President of Operations Sean Garret put his Las Vegas residence up for sale in anticipation of moving to Jackson, TN to continue working for Defendants.

25. Near the end of 2019, Defendants, in an effort to improve the poorly performing LVRO, implemented a litigation department within the facility in addition to the collections department.

26. Approximately 60% of the collections staff was transferred to litigation staff where they assumed greater workloads for the same or less pay.

27. Upon information and belief, in early February of 2020, Executive Vice President of LVRO, Tim Rees, was terminated from employment with Defendants because of LVRO's performance issues.

28. Shortly after the termination of Mr. Rees, LVRO staff began noticing strange persons entering the LVRO workspace because it was being marketed for sub-letting to new tenants.

29. Shortly after the termination of Mr. Rees in February of 2020, certain employees at LVRO asked for raises and were told by Defendants agents that they would be lucky if they even had a job in the next few months, let alone a raise.

<u>Wage and Hour Allegations</u>

30. All hourly employees track their employee time and attendance with Defendants through a software program called "Workday."

31. Workday is a cloud-based software program designed to allow national and global organizations to track employee time through web-based desktop or mobile devices.

32. Defendants have used Workday to track employee time from the beginning of their opening of LVRO.

33. When hourly employees arrive on the morning of each regularly scheduled shift, they must clock-in using the Workday application.

34. Clock-in requires the hourly employees to first unlock their desktop computers.

35. It takes between 3 and 10 minutes to unlock and boot-up each desktop computer ("Boot-up time") before hourly employees can get access to the Workday application to clock-in for their shift.

36. Hourly employees experience a similar delay when they attempt to clock-in after taking their lunch breaks.

37. Hourly employees were not paid for Boot-up time.

38. This unpaid Boot-up time was a significant benefit to Defendants and allowed them to avoid paying overtime to hourly employees on a weekly basis.

39. This unpaid Boot-up time was a significant detriment to hourly employees and required

them to work on average an extra 6 to 20 minutes each scheduled shift without compensation.

40. Defendants, recognizing the delay caused by Boot-up time, allowed for a 10-minute grace period concerning clock-in times within their tardiness policy.

41. Upon information and belief, Defendants altered employee records to prevent paying overtime.

42. On March 23, 2020, Defendants Chief Global Operations Office, Steve Roberts, sent an email to all LVRO employees that stated:

> Today, PRA has made the challenging and difficult decision to close our Las Vegas Regional Office (LVRO) indefinitely, effective immediately. This was not an easy decision to make, given the impact on our employees. After carefully considering overall site performance, and to ensure we are prioritizing and streamlining where necessary, we believe this to be the right next stop and have much gratitude and respect for each member of the LVRO site and their contributions.
>
> I'd also like to announce several realignments within our organizational structure
>
> . . .
>
> Sean Garrett, vice president of operations, will transfer to Jackson, TN to lead our TRO site. Sean managed LVRO for two and a half years, and we are excited to see TRO continue to thrive under his leadership.

43. Defendants effectively terminated the entire LRVO office of approximately 200 employees via email notification – concomitant with a hearty congratulations to executives within PRA that had been promoted.

44. After the entire LVRO staff was terminated via email, Defendants later sent a letter to LVRO employees that attempted to blame the firing on the COVID-19 crisis and attempted to comply with the WARN Act.

45. Defendants did not close or otherwise engage in a mass layoff of any other PRA offices as a result of the COVID-19 crisis.

46. Defendants attempted to use the COVID-19 crisis as pre-text for the failure to comply

with the WARN Act.

47. Upon information and belief, at no point in time did Defendants inform the local, municipal, county, or state authorities of the mass layoff that resulted from closing LVRO.

## Class & Collective Action Allegations

48. Defendants employed both salaried employees and hourly employees.

49. The salaried employee class includes former salaried employees of LVRO who were not paid earned paid leave in the amount of .01923 hours of paid leave for each hour of work performed and/or who were terminated on or about March 23, 2020 in violation of the WARN Act.

50. There were several types of salaried employees, including Human Resources, Administration and Recruiting, Talent Development Specialists, Operations Managers, Coaches, Assistant Vice Presidents, Vice Presidents, and Executive Vice Presidents.

51. All salaried employees were classified by Defendants as hourly exempt employees and were paid a salary for their services.

52. The class of salaried employees is so numerous that joinder of all members is impractical because there are tens of members of the salaried employee class, the location of certain member of this class may not be local, and service and litigation of each claim would result in an unjustified administrative burden and expense to counsel and the court.

53. There are questions of law or fact common to the class of salaried employees, primarily including whether salaried employees were terminated in violation of the WARN Act and whether Defendant violated NRS 608.0197 and NRS 608.02.

54. Robinson is a proper class representative for all salaried employees.

55. Robinson was employed with Defendants beginning on or around September 25, 2017 as a Talent Development Specialist.

56. Robinson was paid a salary by Defendants.

57. Robinson was terminated via email and without prior written notice, along with the rest

of the LVRO salaried employees, on or about March 23, 2020.

58. The claims of Robinson are typical of the claims or defenses of the class because they arise from a violation of the WARN Act with respect to salaried employees terminated via email on March 23, 2020 by Defendants, and whether Defendant violated NRS 608.02.

59. Robinson will fairly and adequately protect the interests of the class.

60. The hourly employee class includes former hourly employees of LVRO who were not paid hourly or overtime pay for Boot-up time, who were subject to Defendants' practice and policy of adjusting time records downward to avoid paying overtime, who were not paid all amounts due at the time of termination, and/or who were terminated on or about March 23, 2020 in violation of the WARN Act.

61. There were several types of hourly employees, including Account Representatives, Account Managers, Account Executives, Senior Account Executives, Litigation Representatives, and Litigation Managers.

62. The class is so numerous that joinder of all members is impractical because, upon information and belief, there are over 100 members of the hourly employee class and service and litigation of each claim would result in an unjustified administrative burden and expense to counsel and the court.

63. All hourly employees were required to clock in and out using the Workday system employed by Defendants to track employee time and attendance.

64. There are questions of law or fact common to the class, namely whether Defendants violated the WARN Act when they terminated the hourly employees via email on March 23, 2020, whether Defendants failed to pay hourly employees owed wages, including overtime pay, and whether Defendants failed to timely pay hourly employees wages due to them at the time of termination.

65. Butler was employed with Defendants beginning on or about November 27, 2017 as a litigation account representative.

66. Butler was paid an hourly rate, plus commissions, as compensation for her employment

with Defendants.

67. Butler was transferred from the collections department to the litigation department near the end of 2019.

68. The claims of Butler are typical of the claims or defenses of the class because she was wrongfully terminated in violation of the WARN Act, she was not paid owed wages, including overtime pay, and she was not paid all sums due at the time of termination.

69. Butler will fairly and adequately protect the interests of the class.

70. Pursuant to 29 USC 216(b), "An action to recover the liability [for unpaid minimum wages or unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

71. In addition to FRCP 23, Plaintiffs bring their claim for relief for violation of the FLSA as an "opt-in" collective action pursuant to 29 USC 216(b) on behalf of all persons who were employed by Defendants as non-exempt employees subject to Defendants' wage-and-hour practices and time-and-attendance policies.

72. Butler may maintain this action against Defendants because she is an employee similarly situated with other employees of Defendants who suffered harm due to Defendants' violation of the FLSA, including failure to pay overtime.

73. Butler has consented in writing to act as a class representative of the FLSA Collective Members.

74. Questions of law and fact common to the FLSA Collective Members include without limitation:

    a. Whether Defendants unlawfully failed to pay overtime compensation in violation of the FLSA;

    b. Whether Defendants failure to pay overtime to its non-exempt FLSA Collective Plaintiffs was willful within the meaning of the FLSA;

    c. Whether Defendants failed to maintain accurate records of actual time worked

by the FLSA Collective Members;

    d. Whether Defendants failed to provide accurate wage statements itemizing all actual time worked and wages earned by the FLSA Collection Plaintiffs; and

    e. Whether Defendants' unlawful time-and-attendance policies are company-wide policies that affects all non-exempt employees.

75. Butler and FLSA Collective Members are similarly situated, have substantially similar job requirements and pay provisions, and are subject to Defendants' common practice, policy or plan of not paying employees for Boot-up time and of adjusting employee time records downward to avoid paying overtime.

76. At present the number of FLSA Collective Members is unknown, but upon information and belief, there are more than 100 such members and therefore, a collective action is the most efficient mechanism for resolving such claims.

77. The number of FLSA Collective Members may be determined from the records of Defendants and potential Plaintiffs may be notified of the pendency of this action by utilizing Defendants' payroll records.

78. Upon information and belief, Defendants violations of 29 USC 207 were repeated, intentional, and willful.

79. Butler and the FLSA Collective Members have been damaged by Defendants violation of 29 USC 207.

80. Butler and the FLSA Collective Members who opt-in to this action are entitled to the full amount of unpaid wages, including overtime, plus and equal amount as liquidated damages, plus attorney fees and costs.

81. A Collective Action under 29 USC 216(b) and/or a class action under FRCP 23 is superior to other available methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual FLSA Collective Member, or hourly or salaried class member may be relatively small, and the expense and burden of the individual redress would make it difficult or impossible for the member to individually redress the harm.

82. Because of the similarity of FLSA Collective Member and hourly and salaried class member claims, individual actions to redress the harms suffered would present the risk of inconsistent adjudications.

83. For the reasons set forth herein, Robinson is authorized under 29 USC 2104(5) to sue individually and to act as a representative of all similarly situated persons for Defendants' violation of 29 USC 2101 *et seq*.

## CAUSES OF ACTION

29 USC 2101 *et seq.*

(WARN ACT)

84. Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

85. Defendants are an "employer" as defined by 29 USC 2101(a)(1).

86. Butler, Robinson and putative class members are "affected employees" as defined by 29 USC 2101(a)(5).

87. On or about March 23, 2020, Defendants engaged in a "mass layoff" of Plaintiffs and those similarly situated as defined by 29 USC 2101(a)(3).

88. On or about March 23, 2020, Plaintiff's suffered an "employment loss" as that term is defined by 29 USC 2101(6).

89. Defendants failed to give sufficient notice to affected employees, or state or local entities as required by 29 USC 2102(a) prior to the mass layoff.

90. Defendants are not excused from the notice requirements of 29 USC 2102(a) and do not qualify for the reduction of notification period as set forth in 29 USC 2102(b).

91. Defendants mass layoff of the affected employees was indefinite and there is no factual basis for Defendants to assert that the provisions of 29 USC 2102(c) apply to extend, mitigate, or preclude the required notice.

92. Defendants mass layoff of the affected employees is not otherwise excused by the provisions of 29 USC 2101 *et seq*. and was not in "good faith" as provided in 29 USC 2104(a)(4).

93. Plaintiffs are entitled to bring this action for Defendants' violation of 29 USC 2102 pursuant to 29 USC 2104 and are entitled to:
    a. Back pay for each day of violation at a rate of compensation not less than the higher of –
        i. The average regular rate received by such employee during the last 3 years of the employee's employment, or
        ii. The final regular rate received by such employee; and
    b. Benefits under an employee benefit plain described in section 29 USC 1002(3), including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.
    c. Civil penalties up to $500 for each day of such violation.
    d. Reasonable attorney fees and costs of suit.

## 29 USC 201 *et. seq.*
### (FLSA) (unpaid overtime)

94. Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs as though fully set forth herein.
95. Defendants are an "employer" as defined by 29 USC 203(d).
96. Butler and the hourly employee class are "employees" as defined by 29 USC 203(e), not falling within any exemption.
97. At all relevant times, Butler and the hourly employee class were under the "employ" of Defendants as set forth within 29 USC 203(g).
98. At all relevant times, Defendants were subject to the requirements of 29 USC 207(a) as it pertains to overtime pay for all time worked in excess of 40 hours in any workweek by Butler and the hourly employee class.
99. Defendants violated the provisions of 29 USC 207(a) when Defendants failed to pay Butler and the hourly employee class for time worked in excess of 40 hours in any workweek.
100. Pursuant to 29 USC 215(a), Defendants are prohibited from violating the provisions of

29 USC 207(a).

101. Butler and the hourly employee class are entitled to damages pursuant to 29 USC 216(b) for Defendants violation of 29 USC 215(a) as follows:

    a. For the amount of unpaid overtime wages;

    b. Liquidated damages in an amount equal to unpaid overtime wages; and

    c. Reasonable attorney fees and costs of suit.

## NRS 608.016
### (unpaid wages)

102. Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

103. NRS 608.016 requires Defendants to pay employee wages for each hour the employee works.

104. Defendants failed to pay Butler and the hourly employee class for each hour worked, including Boot-up time and time excluded by Defendants' adjustment of employee time records.

105. Under NRS 608.020, upon discharge of an employee, all wages and compensation earned and unpaid at the time of the discharge are immediately due and payable.

106. Defendants failed to pay Plaintiffs all wages and compensation earned and unpaid at the time of discharge on or about March 23, 2020.

107. Under NRS 608.140 and NRS 608.040(1)(a), Defendants are liable to Butler and the hourly employee class for unpaid wages and in an amount equal to compensation of each employee at the regular rate of pay for 30 days, and as otherwise allowed by law.

## NRS 608.018
### (unpaid overtime)

108. Plaintiffs incorporate by reference all of the allegations in the preceding paragraphs as though fully set forth herein.

109. Under NRS 608.018, Defendants are required to pay Butler and the hourly employee class 1 and ½ times the regular wage rate for all time worked in excess of 40 in any scheduled

work week, or for all time worked in excess of 8 hours in any workday.

110. Defendants failed to pay Butler and the hourly employee class 1 and ½ times the regular wage rate for all time worked in excess of 40 in any scheduled work week, or for all time worked in excess of 8 hours in any workday, including Boot-up time and time excluded by Defendants' adjustment of employee time records.

111. Under NRS 608.020, upon discharge of an employee, all wages and compensation earned and unpaid at the time of the discharge are immediately due and payable.

112. Defendants failed to pay Plaintiffs all wages and compensation earned and unpaid at the time of discharge.

113. Under NRS 608.140 and NRS 608.040(1)(a) Defendants are liable to Butler and the hourly employee class for unpaid overtime and in an amount equal to compensation of each employee at the regular rate of pay for 30 days and as otherwise allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of all other collective action members, class members, and those similarly situated, pray for judgment against Defendants as follows:

1. For an Order certifying this action under the FLSA and providing notice to all members of the collective action that they may participate in this lawsuit;
2. For an Order appointing Butler as the collective action representative and appointing her counsel as Collective Action Counsel;
3. For an Order certifying this action as a class action under FRCP 23 on behalf of each hourly class member and each salaried class member and providing notice to the hourly class employees and salaried class employees that they may participate in this lawsuit;
4. For an Order appointing Butler as a representative of the hourly class employees and appointing her counsel as Class Counsel;
5. For an Order appointing Robinson as a representative of the salaried class employees and appointing his counsel as Class Counsel;

6. For an Order certifying this action under the WARN Act and providing notice to all members of the collective action that they may participate in this lawsuit;

7. For an Order certifying Robinson as the collective representative of the WARN Act class;

8. For damages according to proof for regular rate of pay under federal and state law for all hours worked;

9. For damages according to proof for overtime pay at the applicable rate under federal and state law for all hours worked;

10. For thirty days of wages for each collective action or class member pursuant to NRS 608.140 and NRS 608.040;

11. For liquidated damages pursuant to applicable federal and state law;

12. For penalties according to federal and state law;

13. For pre and post judgment interest as provided for at the maximum legal rate;

14. For attorney fees and costs as authorized by statute; and

15. For such other relief as the Court deems just and proper.

Dated: May 12, 2020                                 HUTCHINGS LAW GROUP, LLC

By:*/s/   Mark H. Hutchings, Esq.*
Mark H. Hutchings, Esq.
552 E. Charleston Blvd.
Las Vegas, NV 89104
Telephone: (702) 660-7700
MHutchings@HutchingsLawGroup.com
*Attorney for Plaintiffs*